UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GREGORY ATKINSON**, <br> Plaintiff, <br> v. <br> **URBAN LAND PRESERVATION, LLC,** <br> Defendant. | Case No. 15-cv-03689-YGR <br><br> **ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT** <br> Re: Dkt. No. 48 |

Plaintiff Gregory Atkinson brings a single breach of contract claim against defendant Urban Land Preservation, LLC ("ULP") as an alleged third-party beneficiary of a contract entered into between ULP and another entity, Cowan-Newton LLC ("CN"). (Dkt. No. 1-3 at 12–18, "Compl.")[1] Specifically, Atkinson alleges that, pursuant to the contract between ULP and CN, Atkinson was entitled to recover from ULP approximately $1 million in debt that CN owed him. (*Id.* at ¶¶ 11–14.)

Now before the Court is ULP's motion for partial summary judgment. (Dkt. No. 48.) ULP seeks to invalidate $700,000 worth of Atkinson's claim against it, arguing that enforcement of such claims is barred by (i) the statute of frauds and/or (ii) the statute of limitations.

Having carefully considered the pleadings, the papers and admissible evidence submitted on this motion, and oral arguments held on September 6, 2016, and for the reasons set forth more fully below, the Court **DENIES** ULP's motion for partial summary judgment.[2]

**I.    BACKGROUND**

The only remaining cause of action in this case is Atkinson's breach of contract claim

---

[1] Atkinson has dismissed his claims against John Rowell and John Marren. (Dkt. Nos. 45, 56.)

[2] In connection with its motion, ULP filed a Request for Judicial Notice of the following documents: (i) Atkinson's complaint in *Gregory D. Atkinson v. Taitten Cowan, et al.*, No. CIV-512065 (Cal. Sup. Ct. Feb. 24, 2012); and (ii) Atkinson's Third Amended Complaint in this action. Atkinson does not oppose ULP's request. The Court **GRANTS** ULP's request for judicial notice.

1  against ULP for its alleged failure to satisfy its obligation to pay the unsecured creditors of CN,
2  pursuant to a contract entered into between ULP and CN.  Atkinson claims to be one such
3  unsecured creditor and brings this action as an alleged third-party beneficiary of the contract
4  between ULP and CN.[3]  Atkinson's claims as an unsecured creditor and as a third-party
5  beneficiary of the contract are based on the following undisputed facts:

6        In or about 2005, CN purchased approximately fifty-three acres of real property located in
7  Pacifica, California, which it intended to subdivide and develop into lots for sale.  (Dkt. No. 52,
8  Rowell Decl. ¶¶ 2, 4.)  In or around 2007, Atkinson transferred approximately $970,000 in three
9  installments to CN, pursuant to certain agreements between Atkinson and CN:  (i) $350,000 in
10  January 2007; (ii) $350,000 in August 2007; and (iii) $270,000 in December 2007.  (Dkt. No. 51-
11  8, Atkinson Dep. Tr. 24:5–25:22; 27:4–19; 28:3–25; Dkt. No. 51-9, Cowan Dep. Tr. 145:5–8;
12  147:11–24; *see also* Dkt. No. 62-1 at 5.)[4]  The nature of the transactions is disputed, and no fully
13  executed documents evidencing the terms of Atkinson's and CN's agreements have been produced
14  by either party.[5]

15        In any event, in October 2011, CN sold the property to ULP pursuant to a Purchase
16  Agreement (the "ULP Contract").  (Dkt. No. 52 at 5.)  As part of the ULP Contract, ULP agreed to
17  establish a fund from the sale of lots to pay CN's unsecured debts.  In relevant part, the ULP
18  Contract provides:

---

[3] ULP does not seek summary judgment on Atkinson's status as a third-party beneficiary of the ULP Contract.  To the extent that this is disputed, such is reserved for trial.

[4] At oral argument, Atkinson explained that the third transaction in December 2007 was in the amount of $270,531.25, with a value of $275,000 to account for interest accrued on the funds from the first two transactions.  (*See* Dkt. No. 51-6 at 2.)

[5] Atkinson has produced the following documents relating to his transactions with CN:  (i) January 2007 Option Agreement, indicating that Atkinson would pay CN two installments of $350,000 in advance to secure his option to purchase property in the subdivision, (Dkt. No. 51-3, Option Agreement § 3); (ii) August 3, 2007 Memorandum and Agreement, purportedly converting the Option Agreement into a loan, which could be repaid by transferring property from CN to Atkinson, (Dkt. No. 51-4); (iii) August 2007 Promissory Note for $700,000 (Dkt. No. 51-5); and (iv) December 2007 Promissory Note for $275,000 (Dkt. No. 51-6 at 2).  Except for the December 2007 Promissory Note, the validity and enforceability of which ULP is not contesting for the purposes of this motion, neither party has produced fully executed versions of these documents.

> Buyer [ULP] agrees to make a deposit into a bank account controlled by [ULP], amounts totaling $1,778,731, payable as lots in the subdivision of Real Property are sold, based on 75% of proceeds net of Seller's [Cowan-Newton's] closing costs and costs of sale . . . only after payment and reconveyance of all debt against the Real Property (the "Fund"). . . . The Fund shall be used to pay creditors of [CN] and to fund any litigation involving [CN's] creditors.

(Dkt. No. 52 at 11.)[6]  Subsequent to this sale, Atkinson filed a complaint against CN to collect debts CN allegedly owed him.  (Dkt. No. 50 at 4.)  On January 24, 2014, default judgment was entered against CN for $970,531.25 in debt plus $143,083.00 in interest.  (Dkt. No. 51-10 at 3–4.)  ULP was not a party to that action.

In April 2014, ULP began selling lots in the subdivision.  (*See* Dkt. No. 62 at 60, Rowell Dep. Tr. 50:8–23; Dkt. No. 62 at 80, Weber Dep. Tr. 59:21–24; Dkt. No. 64 at 23, ULP's Response to Additional Fact 49.)  Pursuant to the ULP Contract, ULP had, at this point, an obligation to establish a fund from which CN's creditors could be paid.  (Dkt. No. 52 at 11.)  Atkinson has not received any payments subsequent to ULP's sale of lots in the subdivision.  (Dkt. No. 62-1 at 3, Atkinson Decl. ¶ 13.)  Thus, in July 2014, Atkinson filed this action against ULP seeking to enforce the ULP Contract as a third-party beneficiary.

ULP now contests the enforceability of $700,000 worth of Atkinson's claim, arguing that recovery of such debt is barred either by the statute of frauds or the statute of limitations.

## II.     LEGAL STANDARD

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Material facts are those that might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving

---

[6] ULP notes that the amount of the fund was modified by a later agreement, but is not raising the issue for the purposes of this motion.  To the extent the parties dispute how large a fund ULP was obligated to establish under the ULP Contract and how much, if any, of such amount Atkinson is entitled, these are disputes reserved for trial.

party. *Id.*

Where the moving party will have the burden of proof at trial, it "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. *Anderson*, 477 U.S. at 250; *Soremekun*, 509 F.3d at 984; *see* Fed. R. Civ. P. 56(c), (e). The opposing party's evidence must be more than "merely colorable" and must be "significantly probative." *Anderson*, 477 U.S. at 249–50. Further, the opposing party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence showing a genuine dispute of material fact exists. *See Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Nevertheless, when deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011). A district court may only base a ruling on a motion for summary judgment upon facts that would be admissible in evidence at trial. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010); Fed. R. Civ. P. 56(c). It is not a court's task "to scour the record in search of a genuine issue of triable fact," but rather the Court is entitled to "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)); *see also Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.").

### III.   DISCUSSION

ULP proffers two arguments: (a) the statute of frauds bars recovery of Atkinson's claims

1  because the payment of $700,000.00 related to the purchase of real property, or "an interest"

2  thereof, and there is no fully executed contract evidencing such agreements; and (b) recovery of

3  such amounts is barred by the relevant statute of limitations. The Court addresses each below.[7]

### A. Statute of Frauds

The California statute of frauds requires that certain contracts be in "writing and subscribed by the party to be charged or by the party's agent." Cal. Civ. Code § 1624. Relevant to this action, any agreement "for the sale of real property, or of an interest therein," falls within the purview of the statute of frauds. Cal. Civ. Code § 1624(a)(3); *see also Woods v. Bradford*, 254 Cal. App. 2d 501, 505 (1967) (holding that "an option to purchase real property falls within the statute of frauds").

ULP contends that the statute of frauds bars Atkinson's recovery of $700,000 worth of his claim because such payments were made for the option to purchase property, an agreement of which there is no fully executed contract.[8] Atkinson contends, however, that the application of the

---

[7] Atkinson also argues that ULP does not have standing to challenge the underlying obligation between CN and Atkinson because ULP was not a party to those agreements and transactions. However, courts have held that where a party agrees to pay the debts of another, that party "would certainly be allowed to dispute the validity of any debt." *See Bogart v. George K. Porter Co.*, 193 Cal. 197, 204–05 (1924). Alternatively, Atkinson argues that ULP is precluded from challenging the underlying obligation under *res judicata* doctrines because Atkinson has already received a default judgment in state court validating CN's debt to Atkinson. However, such judgment does not have preclusive effect against ULP for the following reasons: First, ULP was not a party in the underlying action and does not appear to be in privity with CN. *See Planning & Conservation League v. Castaic Lake Water Agency*, 180 Cal. App. 4th 210, 229–30 (2009) (discussing standards for determining privity in determining whether judgments can have preclusive effect against a non-party to the litigation). Second, Atkinson received a default judgment and the defenses raised by ULP here were not actually litigated. *See Gottlieb v. Kest*, 141 Cal. App. 4th 110, 149 (2006) (a default "judgment is not conclusive as to any defense or issue which was not raised and is not necessary to uphold the judgment") (internal quotations and citations omitted); *Rice v. Crow*, 81 Cal. App. 4th 725, 736–37 (2000) ("In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated.") (quoting Rest. 2d Judgments § 27 cmt. e).

[8] It remains unclear whether the statute of frauds would apply to the agreements at issue, and any alleged modifications of such agreements, given the disputes of fact regarding the precise nature of the transactions. Additionally, to the extent that an options contract was entered into by Atkinson and CN prior to the recording of a final map, such contract may have been void as a matter of law. *See* Cal. Gov. Code § 66499.30(a) ("No person shall sell, lease, or finance any parcel or parcels of real property . . . until the final map thereof in full compliance with this division and any local ordinance has been filed for record by the recorder of the county in which any portion of the subdivision is located."); *see also Black Hills Investment, Inc. v. Albertson's, Inc.*, 146 Cal. App. 4th 883, 893–94 (2007) (holding that contracts that sold unsubdivided parcels

5

statute of frauds would not be dispositive because, even if the statute of frauds barred enforcement of the agreements, he would still have claims to recover his $700,000.00 as a common count. *See Leoni v. Delany*, 83 Cal. App. 2d 303, 307 (1948) ("Where a contract is merely unenforceable because within the purview of the statute of frauds, an action generally will lie upon a common count."); *cf. Rutherford Holdings, LLC v. Plaza del Rey*, 223 Cal. App. 4th 221, 230 (2014).

The Court agrees with Atkinson. Whatever the nature of the underlying transactions between Atkinson and CN—whether such transactions were for the option to purchase property or were loans—the parties do not dispute that Atkinson provided CN with $700,000.00. Evidence exists that such funds were provided by Atkinson in reliance on CN's promise either to provide Atkinson with property after the lot had been subdivided or to return Atkinson's money. (Dkt. No. 51-8, Atkinson Dep. Tr. 24:5–25:22; 27:4–19; 28:3–25; Dkt. No. 51-9, Cowan Dep. Tr. 145:5–8; 147:11–24; *see also* Dkt. No. 62-1 at 5.) In such circumstances, courts have held that the party who has paid money is entitled to recover such funds under a common count. *See Doke v. Brockhurst*, 150 Cal. App. 2d 514, 516 (1957) ("The failure to give a written agreement as promised in a transaction governed by the statute of frauds thereby rendering the contract unenforceable will entitle the party who has paid money in reliance upon such agreement to its recovery back."); *Leoni*, 83 Cal. App. at 307; *cf. Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987) ("[W]hen promises not within the statute of frauds are coupled with one that is, the former are enforceable if they are divisible or separate.").

Accordingly, the Court **DENIES** ULP's motion for partial summary judgment as to $700,000.00 worth of Atkinson's claims based on the statute of frauds.

### B.     Statute of Limitations

ULP next argues that Atkinson's claims on the $700,000.00 are time-barred. ULP raises the following arguments: (1) Atkinson's underlying claim against CN was barred by the statute of

---

in violation of California Government Code Section 66499.30 and did not fall into any exceptions were void as a matter of law). In any event, the Court need not decide these issues, because, as discussed above, even if the statute of frauds bars enforcement of the agreements, it would not bar Atkinson's ability to recover $700,000 worth of his claims.

6

1  limitations, and therefore, there could be no claims against ULP; and (2) Atkinson's claims against

2  ULP are time-barred. The Court addresses each, in turn.

### 1. Atkinson's Claims Against CN

For Atkinson to have a valid claim against ULP, he must have a claim against CN that has not been barred by the statute of limitations. *See Bogart*, 193 Cal. at 205 (holding that the "creditor must have a claim that has not been barred against the original debtor, and the latter must also have such a claim against the promisor") (internal citations and quotations omitted). Thus, to determine whether Atkinson's claims against CN are time-barred, the Court must determine when Atkinson's claims against CN accrued.[9]

Here, material disputes of fact exist as to when Atkinson and CN intended CN to return the funds to Atkinson. For instance, ULP argues that the unsigned August 2007 Promissory Note for $700,000 states that the debt was to be repaid by August 8, 2008. (Dkt. No. 51-5 at 2.) ULP also cites evidence in which the parties indicated there would be no specified time for repayment of the loan. (Dkt. No. 51-9, Cowan Dep. Tr. 148:15–23.) Atkinson, on the other hand, cites evidence indicating that the loan would not be due until either CN completed the development of the property, or sold the property before the final map was recorded. (Dkt. No. 62-1 at 2, Atkinson Decl. ¶ 10; *see also* Dkt. No. 62 at 41–42, Cowan Trial Tr. 21:4–22:14.) Under Atkinson's version of the events, his cause of action would have accrued in October 2011 when CN sold the property to ULP, and thus, Atkinson's claims against CN would have been timely when he brought sought suit against CN in 2012. (*See* Dkt. No. 52, Rowell Decl. ¶2.) Accordingly, summary judgment on this ground would be inappropriate given the disputes of material fact.[10]

---

[9] California law imposes a two-year statute of limitations for oral agreements or obligations, and a four-year statute of limitations for written agreements. Cal. Code Civ. P. §§ 337, 339.

[10] ULP also argues that if the statute of frauds applied and Atkinson's only claim for recovery against CN was a common count, such claim would have accrued as of the date Atkinson transferred money to CN, citing *Fall v. Lincoln Mortg. Co.*, 115 Cal. App. 651, 655 (1931) (stating that a cause of action for the common count of money "had and received" is ordinarily "commenced within two years after the money is received"). ULP's reliance on *Fall* is misplaced. In *Fall*, the plaintiff argued that he was entitled to recovery because either the contract was *void ab initio* or the defendant failed to provide consideration. *Id.* at 652. The court noted that the plaintiff knew of such deficiencies shortly after entering into the agreement and that he "must have

7

### 2. Atkinson's Claims Against ULP

ULP also argued at the hearing on summary judgment that, even if Atkinson's claims against CN were timely when he brought claims against CN in state court, Atkinson's claims against ULP are not. ULP argues that, at the latest, the statute of limitations on the underlying obligation would have begun to run in 2011, when CN sold the property to ULP. *Bogart*, 193 Cal. at 205 (holding that although the creditor had filed a timely claim against the original debtor, its claims to recover against the grantee were time-barred). Applying the two-year statute of limitations for contract claims based on oral or unwritten agreements, ULP argues that Atkinson's claims against ULP would have run by 2013, one year before Atkinson filed its claim against ULP.

The Court finds, however, that Atkinson's claims against ULP did not begin to run until April 2014, when ULP allegedly breached its contract with CN. *See Pitzer v. Wedel*, 73 Cal. App. 2d 86, 90 (1946) (explaining that the third-party contract, "rather than the original indebtedness, constitutes the gist of the action by a creditor, insofar as the statute of limitations is concerned"). ULP's argument is based on a misreading of *Bogart*. In *Bogart*, the original debtor promised to repay the loan to creditor by March 5, 1907. *Bogart*, 193 Cal. at 199. Prior to that date, the defendant grantee assumed the debtor's debts. *Id.* Although the creditor brought suit against the original debtor within the applicable statute of limitations, the creditor did not bring suit against the grantee until 1917. *Id.* In discussing the creditor's claims against the grantee, the *Bogart* court determined that the creditor's claims would have accrued when the obligation between the grantee

---

known that he was sleeping upon these rights when he waited four and a half years before commencing" the action. *Id.* at 655. Here, Atkinson claims that the underlying promise between him and CN was that the money would be returned either after CN began selling lots in the subdivision, or when CN could no longer do so. In such circumstances, courts have found that the cause of action for recovery of the funds paid accrues upon breach of such promise, even where the statute of frauds bars enforcement of the agreement. *See Rooney v. Sullivan*, 169 Cal. App. 2d 432, 434–35 (1959) ("The action is on the implied promise which the law imposes to repay advances where the original oral promise in reliance upon which the money was advanced cannot be enforced because of the statute of frauds. . . . It seems logical to hold that until the repudiation of the oral promise, or its breach in some other fashion, the law imposes no such implied promise to repay."). In any event, as discussed above, because of disputes regarding the precise nature of the transactions between Atkinson and CN, it remains unclear whether the statute of frauds would bar any such agreements between them.

and the debtor was breached. *Id.* at 202–03. In *Bogart*, that breach occurred on March 5, 1907 when the debt matured and grantee did not pay the creditor. *Id.*

Here, ULP—the grantee—could have only breached its obligations to CN—the debtor—after it began selling lots in the subdivision, per the ULP Contract. (*See* Dkt. No. 52 at 11 ("Buyer agrees to make a deposit into a bank account controlled by Buyer, amounts totaling $1,778,731, payable as lots in the subdivision of Real Property are sold.").) The parties do not dispute that ULP did not begin selling these lots until April 2014. Atkinson's claims against ULP, therefore, could not have accrued until such time, and Atkinson filed this suit against ULP in July 2014. *See Pitzer*, 73 Cal. App. 2d at 89–90 (holding that where grantee agreed to pay the creditors from "proceeds from the sale of crops," that "no cause of action would accrue thereon [until such sale of crops]" and thus the "statute of limitations would not commence to run until then"). Thus, under any statute of limitations, Atkinson's claims against ULP would be timely.

Accordingly, the Court **DENIES** ULP's motion for partial summary judgment on this ground.

### IV. CONCLUSION

The Court **DENIES** ULP's motion for partial summary judgment as to $700,000.00 worth of Atkinson's claims.

This Order terminates Docket Number 48.

**IT IS SO ORDERED.**

Dated: October 5, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**